## Case No. 14,568.

### UNITED STATES v. BENNER.

#### [Baldw. 234.][1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1830.

FOREIGN MINISTERS — ATTACHÉ — IMMUNITY FROM ARREST—PROSECUTION FOR ARRESTING ATTACHÉ—CERTIFICATE OF SECRETARY OF STATE—INDICTMENT.

1. A certificate by the secretary of state, under seal of office, that a person has been recognised by the department of state as a foreign minister, is full evidence that he has been authorized and received as such by the president of the United States

[Cited in Ex parte Baiz, 135 U. S. 421, 10 Sup. Ct 854.]

[Cited in Harris v. Barnett, 4 Blackf. 373; People v. Jones, 24 Mich. 226.]

2. Any person who executes process on a foreign minister is to be deemed an officer under the twenty-fifth section of the act of 1790 [1 Stat. 117]. To support an indictment under this law it is not necessary that the defendant should know the person arrested to be a foreign minister.

3. A foreign minister cannot waive his privileges or immunities, his submission or consent to an arrest is no justification.

4. An assault committed by him may be repelled in self-defence, but does not justify an arrest on process.

5. An indictment under the twenty-seventh section of the act of 1790 need not state the offence to be committed by an officer. It is sufficient to state that the person on whom it was committed was a public minister, without stating that he had been authorized and received as such by the president. This section applies to all public ministers.

6. An attaché to a foreign legation is a public minister within the act of congress.

[7. Cited in Hartshorn v. South Reading. 3 Allen. 501. and in Rhodes v. Walsh (Minn.) 57 N. W. 215, to the point that an officer effects an arrest of a person by laying his hand on him for the purpose of arresting him. though he may not succeed in stopping and holding him.]

The defendant was indicted under the twenty-fifth, twenty-sixth and twenty-seventh sections of the act of 1790.—1 Story Laws, 88. 89 [1 Stat. 117, 118].—for arresting and imprisoning Louis Brandis, a minister of the king of Denmark. The indictment contained four counts: (1) Stating Mr. Brandis to be a public minister. to wit, a secretary of legation. (2) A public minister, to wit, an attaché to the legation of the king. of Denmark. (3) A minister received as such

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

by the president of the United States. (4) An attaché received as such, &c.

Mr. Dallas, district attorney, gave in evidence a warrant of arrest, issued by an alderman of this city against Mr. Brandis, for a small debt, on which the defendant, acting as a constable, arrested Mr. Brandis, detained, and took him before the alderman. Mr. Dallas then offered in evidence the following certificate from the secretary of state, under the seal of the department, to show the public character of Mr. Brandis: "I certify, that by letter dated the 8th November, 1828, the Danish minister informed this department that Mr. Louis Brandis had arrived in this country in the character of attaché to the legation of Denmark in the United States; and that the said Louis Brandis has accordingly, since that date, been recognised by this department as attached to the said legation in that character."

C. J. Ingersoll, for defendant, objected to its admission because it did not state that Mr. Brandis had been received, or authorized by the president of the United States, as a public minister. It only states that he has been recognised as attached to the legation of Denmark, which is neither authorization or reception, and it does not state the recognition to be by the president, which is necessary to bring the case within the law.

Mr. Dallas referred to the law organizing the department of state. 1 Story's Laws, 5 [1 Stat. 28]. A recognition by the department of state, the officers of which acting under the orders of the president, their acts are his; such recognition is an authorization and reception by the president. Independently of this, the certificate is evidence of the fact of Mr. Brandis being a public minister, within the twenty-seventh section, which does not require him to be authorized or received in order to protect him from violence or imprisonment; it is therefore clearly admissible on the counts founded on that section.

BY THE COURT. The evidence is admissible to show the fact of Mr. Brandis being a public minister. It is a question of law what is its legal effect, as to bringing him within the twenty-fifth and twenty-sixth sections of the law, on which the court will give an opinion to the jury, but as it is clearly competent under the twenty-seventh, it must go to the jury.

Mr. Dallas, in summing up to the jury, took the position, that every person charged by his sovereign with the administration of his affairs in a foreign country, is viewed by the law of nations as a public minister; be his grade what it may, he becomes a minister by being sent abroad, by authority, on a diplomatic function. Vatt. Law Nat. bk. 4, p. 132. c. 5, § 56; Dip. Man. 99. Every person so sent to this country, and recognised as such by the department of state, is deemed a minister, authorized and received by the president, both by the acts

of congress, and the decisions of this and the supreme court. U. S. v. Liddle [Case No. 15,598]; U. S. v. Hand [Id. 15,297]; U. S. v. Ortega [Id. 15,971]; U. S. v. Ortega, 11 Wheat. [24 U. S.] 467.

As a person attached to the Danish legation, or an attaché, Mr. Brandis was invested with a diplomatic character, as a public minister of some grade, which invested him with all the immunities of one. The only question for the jury is, whether he has been arrested, imprisoned, or violence offered to his person.

C. J. Ingersoll, for the defendant: The twenty-fifth section applies only to ministers who have been authorized and received by the president; it is this act alone which has the effect of conferring on them the privileges of ministers, as the registration of domestics has under the twenty-sixth. To bring the case within these sections the authorization and reception must be by the president himself, a recognition by the department of state is not his act. The third section of the second article of the constitution, gives the power of receiving ambassadors and other public ministers to him alone, which is a constitutional power, that cannot be exercised by the secretary of state, under the act of 1789,—1 Story, Laws, 5 [1 Stat. 28]. It must be done by the sovereign. Mart. 218; 2 Burlam. Pol. Inst. 198, § 3. The twenty-seventh section applies only to such ministers, as are not in the exercise of their functions, in virtue of their having been received or authorized as such; but are here in transitu, or returning. If, however, Mr. Brandis can be considered as having the privileges of a minister, he waived them by submitting to the arrest, and no man can be deemed in law to be imprisoned, when it is done with his consent. 1 Bl. Comm. 136. If he waived his privilege, the arrest was lawful by our laws, as that is a matter between him and his sovereign. So if a minister assaults another, he may be killed in self defence, though not by way of punishment. Grotius, bk. 2, c. 17. True, it is proved that Mr. Brandis struck the defendant, by which he lost his privilege; this may be done by his own acts, in not asserting it when arrested, in the same manner as if a man sued in a state court, does not claim his right to be sued only in a federal court. Harrison v. Rowan [Case No. 6,140]. A minister also loses his privilege, if he is superseded by another who acts in the place, by the orders of the sovereign. 9 East, 447. To entitle him to exemption from process, it must be proved that his privilege continued till the arrest. The certificate in this case states only, that he had been recognised, not that he was a minister at the date of it.

Mr. Dallas, in reply: The certificate is full evidence of a recognition by the president, up to the time when it is given, recognition ex vi termini, imports his authorizing and

receiving him as minister, his appointment and authority from his sovereign makes him such, the recognition of which by the president, is an admission of the fact, and a receiving him as such without any prescribed form or ceremonial. It is the act of the executive, in whom the nation has incarnated their power to receive ambassadors and other ministers, as a supreme unlimited power, expressly conferred by the constitution, not controllable by any other branch of the government. Being a minister, certain privileges and immunities attach to his character, not as an individual, but as the representative of his sovereign; he is considered as not resident in the country to which he is sent, but near to it, and is not amenable to the laws, or jurisdiction of its courts. The immunity of his sovereign is imparted to him, his person, his house, is on the territory of his sovereign, and so are all his privileges those of his sovereign. He may waive or renounce his personal rights, but not those he enjoys in his representative character. U. S. v. Ortega [supra]; 3 Burrows, 1480; Talb. 281. If his sovereign divests him of it, as in the case of 9 East, 447, he may be arrested. The cases where a person may waive his privilege, are where the court has jurisdiction of the person and cause of action, but a party has a personal privilege which he does not assert, as in Harrison v. Rowan [supra]. Here there is a want of jurisdiction. Admitting that by giving a blow to the defendant, he subjected himself to the law of self-defence, according to Grotius, it is not to punish; but it cannot make him subject to an arrest on process for a debt. Having proved that Mr. Brandis was a public minister, and that defendant arrested him, it is not necessary to prove that he knew his character. This is not required by the law. U. S. v. Liddle [Case No. 15,598]; U. S. v. Ortega [supra]; U. S. v. Smith [Case No. 16,338]. The defendant acts at his peril.

BALDWIN, Circuit Justice (charging jury). By the constitution of the United States, the power of receiving ambassadors and other public ministers, is vested in the president of the United States; this power is plenary and supreme, with which no other department of the government can interfere, and when exercised by the president, carries with it all the sanction which the constitution can give to an act done by its authority. In the reception of ambassadors and ministers, the president is the government, he judges of the mode of reception, and by the act of reception, the person so received, becomes at once clothed with all the immunities which the law of nations and the United States, attach to the diplomatic character.

The evidence of the reception of Mr. Brandis in this character, is the certificate from the secretary of the state which has been read. By the law organizing the department of state, it is the special duty of this officer, to perform all such duties as shall be entrusted to him by the president, to conduct the business of the department in such manner as he shall order and instruct, also to take an oath for the faithful performance of his duties. He is denominated in the law, "the secretary of foreign affairs;" his appropriate duties are, correspondence and communication with foreign ministers under the orders of the president; he has the custody of all the papers and archives of the department in relation to the concerns of the United States with foreign nations. Whatever act then is done by that department must be taken to be done by the orders or instructions of the president; the certificate of the secretary under the seal, oath, and responsibility of office, must also be taken as full evidence of the act certified. The president acts in that department through the secretary, the one directs, the other performs the duties assigned; the law makes that department with all its officers, the agent of the executive branch of the government, so that a certificate under its seal by the secretary is full evidence, that what has been done by the department has been done by it in that capacity. If the law imposed on that department any duties upon subjects over which the president had no control, or none exclusive of the other branches of the government, a certificate from its chief officer would not be evidence that it was done by the president; but as it can act on no subject unless under his orders, its acts must be taken to be his, especially as to the reception of ministers, as to which congress has no power to enjoin any duties on the department, or its officers.

You will therefore consider Mr. Brandis as having been recognised by the president in the character of an attaché to the legation of Denmark in the United States; and that such recognition is, per se, an authorization and reception of him, within the meaning of the act of congress, for we cannot presume, that the president would recognise a minister, without receiving him. In the case of U. S. v. Liddle [Case No. 15,598], it was held by this court, that a certificate from the secretary of state, that a chargé d'affaires of Spain, had introduced a person to the president as an attaché and secretary to that legation, was evidence of his reception as such. U. S. v. Liddle [supra]; U. S. v. Ortega [Case No. 15,971]. Such recognition invests him with the immunities of a minister, in whatever form it may be done, and no court or jury can require any other evidence of a reception: we instruct you then as a matter of law, that at the time of the alleged arrest, Mr. Brandis was a minister of Denmark in the character stated in the certificate.

The only remaining question is, whether he was arrested, imprisoned, or violence offered to his person by the defendant. An arrest is the taking, seizing or detaining the person of another, touching or putting hands upon him in the execution of process, or any

act indicating an intention to arrest. Imprisonment is the detention of another against his will, depriving him of the power of locomotion: if you believe the witnesses, the evidence fully establishes these charges in the indictment. Whether Mr. Brandis submitted or consented to the arrest is not material. The privileges of a foreign minister are not personal, nor is their violation punished as an injury to himself, the immunity from arrest is the privilege of the sovereign who sends him, the injury is done to him, in the person of his representative. The laws of nations protect the minister, that he may not be obstructed in the business of his mission, his person is as inviolable as his sovereign, within whose territory he is presumed to reside.

Hence the laws of the country to which he is sent, can no more be enforced against him, than in the country from whence he came; being considered as in the territory of his own sovereign, no other has any jurisdiction over him. The consent of the sovereign to the violation of the rights and privileges which belong to himself, either in person or in his representative, are equally necessary, whether the minister resides in a foreign country or his own. The general law of all nations, as well as the municipal laws of each, exempt ministers from all jurisdiction or control over their persons, so long as their representative character is recognised by the government which sends or receives them; if they exercise the functions of ministers, or retain that character, their exemptions attach to their office whether they claim them or not. There is no principle of national law, or any word in the act of congress, which justifies the arrest of a minister who waives the privileges of the diplomatic character, you will therefore dismiss all considerations of this kind from your minds. But though the person of a minister is inviolable, yet he is not exempted from the law of self defence; if he unlawfully assaults another, the attack may be repelled by as much force as will prevent its continuance or repetition. The counsel for the defendant has endeavoured to bring his case within this principle, by evidence that he received a blow from Mr. Brandis; were the fact so, however, it would be no justification of the arrest on process, which is not a right of self defence.

It is objected to this prosecution, that the defendant was not an officer within the meaning of the law; but this objection cannot avail him, the warrant was directed "to the constable of —— ward." the defendant assumed and acted in that character in the execution of the warrant. and must be considered as one de facto estopped by his acts from denying it.

It is next contended that it must be proved that the defendant knew Mr. Brandis to be a minister at the time of the arrest; the law does not make knowledge an ingredient in the offence, the case meets fully the definition of the offence prohibited by the act of congress. which, as a general rule, is all that is requisite to find a verdict of guilty; this objection has been overruled by this court in other cases,—U. S. v. Liddle [supra]; U. S. v. Ortega [supra],—and, we think, very properly.

The jury found the defendant guilty on the second count, charging, "that the said Peter R. Benner, afterwards, to wit, &c. with force and arms, did imprison the said Louis R. Brandis, he, the said Louis R. Brandis, then and there being a public minister, to wit, an attaché to the legation of his majesty the king of Denmark, near the United States of America, in manifest infraction of the law of nations, contrary," &c.

Mr. Ingersoll then moved for a new trial, which was overruled. He then moved in arrest of judgment. (1) Because this count does not allege the defendant to have been an officer, or to have executed process against a minister. (2) Because it does not allege that Mr. Brandis had been authorized or received as a minister by the president.

Mr. Ingersoll: Every indictment must contain a description of the offence with certainty. 1 Chit. Cr. Law, 169–172, 227, 228, 275, 281, 287. The want of certainty is not cured by verdict, and any defect which can be reached by demurrer is good cause for arresting the judgment. Id. 661. There can be no conviction under the twenty-fifth and twenty-sixth sections, unless the imprisonment is under process and executed by an officer who acts under colour of its authority; here no process is averred to have issued, and the defendant is not stated to be an officer. Under the twenty-seventh section, the imprisonment need not be by colour of or under process, but the minister must have been authorized and received by the president; the three sections are connected. the twenty-seventh refers to a minister who has been received. as the definition of one who was intended to be protected by the law. The fact of reception must therefore be averred distinctly, the want of which can be supplied by no intendment, that being the only act which accredits the minister. it must be found to have been done by the president, or the law cannot apply. An attaché is not a public minister; "attaché" is not an English word, and all indictments must be in English. 1 Saund. 242, note 1. Finding him a minister, viz. an attaché, does not show him to be one; the office of a videlicet is only to particularize, explain or restrain; but like an innuendo. it cannot enlarge the meaning. 1 Chit. Cr. Law, 226.

Mr. Dallas: The second count is under the twenty-seventh section, and laid in the words of the law, which do not require that the indictment should superadd any thing to the description of the offence. or to aver any thing which is not made a constituent of the offence. U. S. v. La Jenne Eugenie [Case No.

15,551]. This law is passed to vindicate the law of nations, which protects ministers not received (Vatt. Law Nat. bk. 4, p. 466, c. 7, § 84), as where they are in transitu, or on their arrival before being received, recalled or dismissed; this section is intended to embrace ministers of every description, whatever may be their situation, if they are so at the time of the offence. It is sufficient for an indictment, that it lays the offence in substance according to the requisitions of the law creating it: exceptions must be made out by the defendant. Hawk. P. C. bk. 2, c. 25; Salk. 110; 1 W. Bl. 230; U. S. v. Bachelder [Case No. 14,490]; 2 Hale. P. C. 107. If it follows the words of the statute, no further particularity is required. 2 Burrows, 1035; [U. S. v. Gooding] 12 Wheat. [25 U. S.] 460, 461; U. S. v. La Coste [Case No. 15,548]. A videlicet is to explain. If material, it must be proved; if not, it is surplusage and not traversable (2 Saund. 291, note 1); though it must appear that Mr. Brandis is a public minister, the grade is immaterial; the word "attaché" is used here as the description, a designation of his particular relation to his sovereign; it is a term well known, as "chargé des affaires," which in the case of Ortega was held good. U. S. v. Ortega [Case No. 15,971]; Id., 11 Wheat. [24 U. S.] 467. It is not usual or necessary to translate in an indictment a term of designation used by a foreign government in its application to one of their agents near foreign governments. 1 Chit. Cr. Law, 175; 1 Saund. 242.

HOPKINSON, District Judge. The defendant was put upon his trial upon an indictment containing six counts. The first charged, that he did imprison one Louis Brandis, he being public minister, to wit, the secretary of the legation from his majesty the king of Denmark, near the United States of America. The second, that he did imprison the said Louis Brandis, he being a public minister, to wit, an attaché to the legation of his majesty the king of Denmark, near the United States. The third sets forth that a certain writ was sued forth and prosecuted by one George Wilson, from one John Binns, an alderman of the city of Philadelphia, whereby the person of the said Louis Brandis, a public minister, the secretary of the legation of his majesty the king of Denmark, authorized and received as such by the president of the United States, was arrested; and that the defendant, Peter R. Benner, being an officer, to wit, a constable of the city of Philadelphia, did execute the said writ, and thereby arrest the person of the said Louis Brandis. The fourth is the same with the third, except that Louis Brandis is styled an attaché of the legation of his majesty the king of Denmark. The fifth charges, that the defendant did offer violence to the person of the said Louis Brandis, a public minister, to wit, the secretary of the legation of his majesty the king of Denmark. And the sixth is the same with the fifth, except that Louis Brandis is styled an attaché to the legation. After a full hearing upon all the facts and law of the case, it was given to the jury under a charge from the court, in which the evidence was reviewed, and the questions of law distinctly answered. The jury returned with a verdict of conviction on the second count of the indictment, and of acquittal as to all the others. The counsel of the defendant has filed certain reasons in arrest of the judgment on this conviction; and other reasons for a new trial. Both motions have been elaborately argued, and are now to be decided.

The reasons in arrest of judgment are two: (1) That the only count on which the verdict is given against the accused does not describe him as an officer; does not charge him with having executed process, nor state any offence against any act of congress or law of the United States. (2) That the said count does not state that a public minister of any foreign power or state, authorized and received as such by the president of the United States, was imprisoned, or was or might have been arrested or imprisoned.

The act of congress upon which this indictment is framed provides, in its different sections, for different classes of cases, and the counts of the indictment are made to meet the different provisions of these sections. The twenty-fifth section enacts, that if any writ or process shall be sued forth or prosecuted in any of the courts of the United States, or of a particular state, whereby the person of any ambassador or other public minister of any foreign prince or state, authorized and received as such by the president of the United States, may be arrested or imprisoned, &c., such writ or process shall be adjudged to be utterly null and void. The twenty-sixth section enacts that in case any person or persons shall sue forth or prosecute any such writ or process, such person or persons, and all attorneys or solicitors prosecuting or soliciting in such case, and all officers executing any such writ or process, being thereof convicted, &c. The twenty-seventh section enacts, that if any person shall violate any safe conduct, or passport duly obtained, and issued under the authority of the United States, or shall strike, wound, imprison, &c., by offering violence to the person of an ambassador or other public minister, such person, &c. The twenty-fifth and twenty-sixth sections afford protection and redress for public ministers, authorized and received as such by the president of the United States, and against arrest and imprisonment under and by virtue of any writ or process sued forth and prosecuted in any court of the United States, or of a particular state, or by any judge or justice therein, and all the counts in this indictment intended to charge an offence in violation of these sections, do state that Louis Brandis was a public minister, authorized and received as such by the president of the United States; that a writ

was sued forth against him from an alderman of the city of Philadelphia, and that the defendant, being an officer, did execute the said writ, and thereby arrest the person of the said Louis Brandis; upon these counts the defendant is acquitted by the verdict of the jury. The twenty-seventh section of the act is intended to cover other cases not described in the preceding sections, and makes it penal for any person to imprison the person of a public minister, although he may not be authorized and received as such by the president of the United States, and although the person who thus offers violence to his person, be not an officer, and does it not by virtue of any writ or process from any court, judge or justice. The count on which the defendant has been convicted, charges the offence punishable under this section of the act, and the offence is described in the indictment as it is described in the act; which does not require that the defendant should be an officer having executed process, nor that the public minister, who was imprisoned, should have been authorized and received as such by the president of the United States.

The reasons for a new trial will now be considered. The second count on which the defendant has been convicted, relates to the same transaction, and the same public minister as the first, of which he is acquitted, and differs from it only in describing the minister as an attaché to the legation of Denmark, and the first calls him the secretary of the legation; but it was the clear right of the jury, and so it was given them in charge, to find a general verdict of guilty, leaving it to the court to apply it to the counts in the indictment, or to select for themselves the count on which they would render the verdict, as in their opinion the evidence might warrant. If the count were bad in itself, such a verdict could not be maintained; but it is no objection to it, that it is substantially the same with another count on which the defendant has been acquitted, for the different counts of an indictment always relate to the same transaction, describing it in different ways, or with different circumstances, that the jury may apply their verdict to all or either of them, as the evidence shall warrant; or if the verdict be generally guilty, the application of it is made by the court. No injury or injustice is done to the defendant, who is put but once on his trial for the same offence. The jury, in this case, have not selected the count for their verdict of conviction to which the evidence most particularly applies; but this was for them to judge of, and is no cause of complaint on the part of the defendant; it cannot affect his punishment, and is clearly maintained by the evidence.

It is our opinion that the reasons filed in arrest of judgment are not maintained, and it is ordered that the motion be overruled.